ATCO SAVINGS AND LOAN ASSOCIATION, A CORPORA-
TION OF THE STATE OF NEW JERSEY, PLAINTIFF, v.
AMEDEO ANGELINA, JOSEPH PASSARELLA, Jr., HUGO
M. CHAMBOSSE, LOUBERT DeSORTE, JOHN BARBACCIA
AND COMMISSIONER OF BANKING AND INSURANCE
OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 13, 1956.

502

*Mr. Norman Heine*, attorney for plaintiff.

HANEMAN, J. S. C. This action was commenced by the Atco Savings and Loan Association, formerly known as Waterford Township Building and Loan Association of Waterford Township, N. J., a New Jersey corporation, successor by merger with the Atco Building and Loan Association of Waterford Township, N. J., against the defendants, based upon the causes of action as follows:

1. Plaintiff holds certain reserves created by Waterford Township Building and Loan Association of Waterford Township, N. J., and Atco Building and Loan Association, under emergency legislation and orders issued by the Commissioner of Banking and Insurance, and seeks a declaratory judgment regarding the rights of all classes of shareholders in said associations, whether such shares be withdrawn, lapsed or matured.

2. Plaintiff seeks instructions, as trustee of its reserve accounts, regarding the duty to distribute or transfer these accounts into its general reserve accounts or in the alternative to the shareholders, their assigns or personal representatives of any shares affected by the creation of the aforesaid reserves.

Generally, the objective of this action is to enable the plaintiff to dispose of an account now carried on the association's books as "contingent reserve account," either by distribution to persons   determined to be entitled thereto, if any,

or by a transfer of that reserve account into the general reserve accounts of the association.

A brief history of this matter is essential to the proper isolation of the specific issues requiring legal disposition.

Plaintiff was formerly known as the Waterford Township Building and Loan Association of Waterford Township, N. J., and was organized and operated as a building and loan association under the laws governing building and loan associations in the State of New Jersey. On the 30th day of July 1941 the said Waterford Township Building and Loan Association of Waterford Township, N. J., merged with the Atco Building and Loan Association, which merged corporations continued to act as a building and loan association under the name of Waterford Township Building and Loan Association of Waterford Township, N. J. On November 15, 1954 said Waterford Township Building and Loan Association of Waterford Township, N. J., changed its corporate name to Atco Savings and Loan Association.

On August 10, 1933 plaintiff, as Waterford Township Building and Loan Association of Waterford Township, N. J., had issued and outstanding a number of series of installment shares of stock in said association, a portion of which shares was held by the defendants, Amedeo Angelina and Joseph Passarella, Jr. Angelina has been designated the representative of the class of shareholders who withdrew their shares before maturity and were paid the withdrawal value thereof. Passarella has been designated the representative of the class of shareholders who held their shares until maturity and were then paid the matured value thereof.

On May 23, 1933 the State Commissioner of Banking and Insurance, based upon the apparent economic emergency of that time, under and by virtue of the power and authority vested in him by L. 1933, c. 48, approved March 10, 1933, and L. 1933, c. 166, approved May 11, 1933, issued to plaintiff, as Waterford Township Building and Loan Association of Waterford Township, N. J., Order Number Three, imposing certain restrictions and limitations upon plaintiff's operations.

Said Order Number Three provided and directed, among other things, that plaintiff association create certain reserves in accordance with the formula therein contained, as follows:

"Sec. 1. Reserves to be set up in your Association under previous and subsequent Orders issued pursuant to Chapter 48, P. L. 1933, and Chapter 166, P. L. 1933, shall be created from the following sources and in the order set out below:

(a) From real estate reserves.

(b) From all other reserves, undivided profits or unapportioned profits.

(c) From net profits of the current fiscal period.

(d) From profits previously apportioned. In setting up reserves from this source, the following method shall be used:—The amount of reserves to be set aside from such apportioned profits as compared with the total amount of such apportioned profits shall be calculated on a percentage basis, and such percentage shall then be used in reducing the profits apportioned to the shares of each member.

The amount of reserves to be set up from the sources outlined above in items (c) and (d) shall be determined by the Commissioner of Banking and Insurance.

(1) Any reserves set up from previously apportioned profits shall until further notice be retained and shall constitute a *contingent reserve* and shall be designated as such. Until further notice, such profits, established as a contingent reserve shall not be paid out as a *withdrawal or maturity nor applied as a credit* for reduction of any obligations of the shareholders so affected.

(2) Losses sustained upon the sale of any real estate owned by your Association shall be charged to the reserves as established in the above mentioned order of (a), (b), (c), (d). Any portion of the reserves established from the source outlined in sub-division (d) above that remain unused after your real estate has been sold, shall be returned in equitable proportions in the form of credits to the shares which have been affected, as provided by sub-division (d) above mentioned, and to the extent to which such shares are proportionately entitled to such credits, but not exceeding the amount by which such shares have been so affected, *and provided further, that such shares thus previously affected have not been lapsed, withdrawn or paid out as matured shares.*"

Pursuant to said Order Number Three plaintiff, on August 10, 1933, with the approval and determination of the Commissioner of Banking and Insurance, created from the sources set forth in section 1 of said order certain reserves. Part of the funds to create the amount of such reserve determined to be necessary by the association's board of

directors with the approval and determination of the then Commissioner of Banking and Insurance, were taken from the net profits of the then current fiscal year and part from the profits previously apportioned as permitted by section 1 (c) and (d).

On November 8, 1933 the Commissioner of Banking and Insurance, purportedly acting under the authority of the above Act, issued to plaintiff, as Waterford Township Building and Loan Association of Waterford Township, N. J., Order Number Four.

Said Order Number Four, so far as here pertinent, made one important change in Order Number Three.

Order Number Four, in part, provided:

"(2) Losses sustained upon the sale of any real estate owned by your Association shall be charged to the reserves as established in the above mentioned order. Any portion of the reserves established from the source designated (d) above, remaining unused after all your real estate is sold, shall be returned or credited on an equitable basis to the members whose shares have been affected by setting up reserves from said source, or to their assigns or legal representatives, whether or not such shares so affected are still in force or have been subsequently lapsed, withdrawn or matured. Your Association is hereby authorized to issue participation certificates to the members whose shares have been affected by setting up reserves from the source designated (d) above, the form of such participation certificate to be first approved by this Department. Reserves established from earnings after the close of the present fiscal year shall not be subjected to any losses until the reserves heretofore established are first exhausted; such reserves if not used may likewise be made returnable to members whose shares were affected thereby."

A similar situation existed insofar as the Atco Building & Loan Association was concerned.

It would seem that the answer to the plaintiff's inquiry is to be found in the very terms of the order designated Order Number Four, wherein it is provided that any portion of the reserves established from the source designated (d), i. e., profits previously apportioned, are to be credited on an equitable basis to the members whose shares have been affected by setting up reserves from said source, and as well the provision that reserves established from earnings after

the close of the present fiscal year shall not be subject to any losses until the reserves theretofore established are first exhausted, and if any such reserves are not used, they likewise be made returnable to members whose shares are affected thereby.

It is also to be noted that Order Number Three designates the reserves created from profits previously apportioned as "contingent reserve" and provides that such profits shall not be paid out until further notice. This is entirely consistent with the theory that installment building and loan shareholders are in effect partners and that they share both in the profits and losses in each series of installment stock so authorized.

As stated by Mr. Justice Heher in *Thirteenth Ward Building and Loan Association of Newark v. Weissberg*, 115 *N. J. Eq.* 487 (*E. & A.* 1934), in becoming a member of the Association, the shareholder does so, ostensibly, at least, with the purpose of remaining in it to the end, bearing his part of all its burdens, and *finally sharing all its profits in the same proportion.* See also *In re Sixth Ward Building & Loan Ass'n of Newark, N. J.*, 134 *N. J. Eq.* 98 (*Ch.* 1943); *Hudson Building & Loan Ass'n v. Black*, 139 *N. J. Eq.* 88 (*E. & A.* 1946).

It would seem eminently unfair and unjust to fail to pay to the stockholders those profits which their respective contributions have earned after the same had been reserved for a contingent loss, which loss never materialized. To reach any other conclusion would be to deny them an equal participation in the profits to which they were entitled, and to give such profits to shareholders who are not so entitled.

It is therefore here held that the reserves with which we are here concerned shall be paid in equitable proportions to those shareholders who had withdrawn before maturity, or who had been paid upon maturity.